## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JERSEY MIKE'S FRANCHISE SYSTEMS, INC.** | Civil Action No. 3:23-cv-03444-GC-TJB |
| **Plaintiff,** | |
| **v.** | |
| **AMERICAN ARBITRATION ASSOCIATION, INC., OPHELIA AUGUSTINE, and CECELIA LAHR** | |
| **Defendants.** | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS OPHELIA AUGUSTINE AND CECELIA LAHR'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

**Table of Contents**

INTRODUCTION ........................................................................................................1

RELEVANT FACTUAL BACKGROUND ................................................................3

STANDARD OF REVIEW .......................................................................................6

ARGUMENT .............................................................................................................7

   I. THE COURT HAS NO JURISDICTION OVER THE ADMINISTRATION OF AN ARBITRATION UNTIL AFTER THE FINAL AWARD ...........................................7

   II. PLAINTIFF MAY NOT EVADE ITS OWN ARBITRATION AGREEMENT BY ASKING THIS COURT TO ADJUDICATE THE DISPUTES IN THE ARBITRATIONS ...................................................................................................11

   III. THIS CASE DOES NOT CONCERN A DISPUTE RELATING TO THE SCOPE, APPLICATION, AND ENFORCEABILITY OF THE ARBITRATION AGREEMENT BUT AT MOST INVOLVES A QUESTION OF WHETHER A CLAIM IS ARBITRABLE .........................................................................................................13

CONCLUSION .......................................................................................................19

# Table of Authorities

Page(s)

Cases

*Brown v. Google LLC*,
525 F.Supp.3d 1049 (N.D. Cal. 2021) ............................................................... 11

*Clarus Med., LLC v. Myelotec, Inc.*,
2005 WL 3272139 (D. Minn. Nov. 30, 2005) ................................................... 12

*Conntech Dev. Co. v. Univ. of Connecticut*,
102 F.3d 677 (2d Cir. 1996) ............................................................................... 14

*Cordas v. Uber Techs., Inc.*,
228 F. Supp. 3d 985 (N.D. Cal. 2017) ............................................................... 19

*Festival Fun Parks, LLC v. Mountain Creek Resort, Inc.*,
2015 WL 758467 (D.N.J. Feb. 23, 2015) ............................................................. 8

*Gould Elecs.. Inc. v. U.S.*,
220 F.3d 169 (3d Cir. 2000) ................................................................................. 6

*Gulf Guaranty Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*,
304 F.3d 476 (5th Cir. 2002) ......................................................................... 7, 8, 9

*Hedges v. U.S.*,
404 F.3d 744 (3d Cir. 2005) ................................................................................. 7

*Hooters of Am., Inc. v. Phillips*,
173 F.3d 933 (4th Cir. 1999) ............................................................................... 8

*Information Systs. Audit and Control Assoc., Inc. v. TeleCommunication Systs., Inc.*,
2017 WL 2720433 (N.D. Ill. June 23, 2017) ................................................... 12

*Jones v. Dairy Farm v. Local No. P-1236*,
760 F.2d 173 (7th Cir. 1985) ............................................................................. 15

*Loewen v. Lyft, Inc.*,
2015 WL 12780465 (N.D. Cal. June 12, 2015) ................................................. 18

*Marc Rich & Co. v. Transmarine Seaways Corp.*,
443 F. Supp. 386 (S.D.N.Y. 1995) ...................................................................... 9

*Merit Ins. Co. v. Leatherby Ins. Co.*,
714 F.2d 673 (7th Cir. 1983) ............................................................................. 12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ........................................................................................... 12

*Moses H. Cone Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1982) ................................................................................................. 8

*Oxford Health Plans LLC v. Sutter*,
569 U.S. 564 (2013) ........................................................................................... 10

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
    998 F.2d 1192 (3d Cir. 1993) .................................................................6
*Preston v. Ferrer*,
    552 U.S. 346 (2008) ........................................................................12
*Richardson v. Coverall N. Am.*,
    811 Fed. Appx. 100 (3d Cir. 2020) ....................................................16
*Sundquist v. Ubiquity, Inc.*,
    2017 WL 3721475 (S.D. Cal. Jan. 17, 2017) ......................................19
*Teamsters Local Union v. J.H. Merritt & Co.*,
    770 F.2d 40 (3d Cir. 1985) .................................................................15
*Terminal Construction Corp. v. Bergen County Hackensack River Sanitary*
*Sewer Dist. Authority*,
    18 N.J. 294, 113 A.2d 787 (1955) .......................................................17
*U.S ex rel. Atkinson v. Pa. Shipbuilding Co.*,
    473 F.3d 506 (3d Cir. 2007) ...............................................................6
*United Indus. Workers v. Government of Virgin Islands*,
    987 F.2d 162 (3d Cir. 1993) ...............................................................14

Statutes

9 U.S.C. § 5 .......................................................................................9
9 U.S.C. § 10 ..................................................................................9, 10
28 U.S.C. § 1331 ................................................................................14
§ 10(a)(4) .........................................................................................10

Rules

Rule 12(b)(1) of the Federal Rules of Civil Procedure .............................1, 3, 6, 7

## INTRODUCTION

Defendants Ophelia Augustine ("Augustine") and Celia Lahr ("Lahr" and, together with Augustine, "Defendants" or "Claimants"), by and through their undersigned counsel, respectfully move for dismissal with prejudice of the Complaint filed by Plaintiff Jersey Mike's Franchise Systems, Inc. ("Plaintiff" or "Jersey Mike's") for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Faced with various pending arbitration proceedings asserting claims against Plaintiff under the federal Wiretap Act and California Invasion of Privacy Act ("CIPA") ("the Arbitrations"), Plaintiff now seeks to do an end run around its own Arbitration Agreement by asking this Court to take the extraordinary step of interfering with the administration of those Arbitrations and having the disputes between the parties adjudicated in this Court.

In particular, Plaintiff seeks both equitable relief and monetary damages from Claimants and Defendant American Arbitration Association ("AAA") (together, "Defendants") on the theories that: (i) the disputes that are the subject of the Arbitrations are non-arbitrable because Claimants are not "registered users"; (ii) to the extent there is an arbitrable dispute, AAA has failed to apply the Arbitration Agreement properly and should be replaced with JAMS insofar as the AAA Arbitrators have used the Consumer Arbitration Rules (the "Consumer Rules") instead of the Commercial Arbitration Rules (the "Commercial Rules") and permitted Claimants to assert claims under California law instead of New Jersey law; and (iii) Claimants are in breach of the Terms of Use by accessing Plaintiff's website to "manufacture frivolous legal [wiretapping] claims against Plaintiff of the same type as they have asserted against

many other companies," and by seeking to "alter or modify" the website by "seeking to preclude Plaintiff from using [the] Meta," Inc. ("Meta") Pixel tracking software even though Claimants allegedly consented to have their website activities disclosed to Meta.

It is well established that Courts will not interfere with the administration of pending arbitrations except under extraordinary circumstances, nor will they allow parties to circumvent their own arbitration agreements by seeking adjudications of issues raised in the claims presented in those arbitration proceedings. To invoke this Court's subject matter jurisdiction and litigate the merits of issues squarely presented by the claims and defenses in the Arbitrations (including whether Claimants consented to the alleged wiretapping activities), Plaintiff seeks to manufacture a factual dispute over arbitrability and a challenge to AAA's willingness to administer the Arbitrations in accordance with the Arbitration Agreement. However, neither of these grounds supports jurisdiction.

Even if an arbitrator may have erred in determining that a dispute was arbitrable or in construing the arbitration agreement to allow application of the Consumer Rules rather than the Commercial Rules and to permit Claimants to pursue a wiretapping claim under California law rather than New Jersey law, the Federal Arbitration Act ("FAA") does not permit courts to overrule an arbitrator simply because it disagrees with the arbitrator's interpretation of the contract. While Plaintiff asserts that the issue of whether Claimants were "registered users" implicates the "scope" of the Arbitration Agreement, Plaintiff failed to timely raise this issue in the Arbitrations and Plaintiff contradicts its untimely conclusory allegations disavowing its own Arbitration Agreement by simultaneously asserting that Claimants breached the Terms

of Use—something that Claimants could only have done if they had manifested assent to those Terms of Use by registering accounts on the website.

Accordingly, there is no basis for jurisdiction over this dispute (including over the merits of issues raised by the claims and defenses in the pending Arbitrations) and, as a consequence, the Complaint should be dismissed in its entirety pursuant to Rule 12(b)(1).

## RELEVANT FACTUAL BACKGROUND

Claimants are individuals and residents of California who both are registered users of Plaintiff and separately accessed Plaintiff's website. During those interactions Plaintiffs searches and orders thereon were transmitted to Meta as a result of Plaintiff's installation of a Meta software tool known as the Meta Tracking Pixel ("Pixel"), without Defendants' knowledge or consent. In various pending Arbitrations brought before AAA, Claimants allege that they were registered users of the website and that Plaintiff enabled the substance of their communications with the website to be shared with Meta without their authorization while they were logged off of the Meta platform. In the Arbitrations, Claimants allege that Plaintiff violated both federal and California wiretapping statutes by enabling Meta to intercept and use Claimant's communications with Plaintiff's website for Meta's own commercial purposes by virtue of the Pixel software.

In response to the Demands in the Arbitrations, Plaintiff did not deny that the Arbitration Agreements applied but argued that the AAA's Commercial Rules rather than the Consumer Rules should apply. See Complaint, Ex. A. After one or more AAA Arbitrators

determined that the Consumer Rules were applicable, Plaintiff commenced this action by filing the Complaint against Claimants and AAA on June 26, 2023, alleging for the first time that Claimants were not "registered users" subject to the Arbitration Agreement and further asserting that AAA had failed to abide by the Arbitration Agreement and should be replaced by JAMS and that Claimants had breached the Terms of Use by using Plaintiff's website and then pursuing claims under the federal Wiretap Act and CIPA.  Either way, (if Claimants were registered users or just accessed Plaintiff's website), the terms and conditions apply, as well as the sweeping arbitration provision.

The operative terms and conditions do not require anyone who accesses Plaintiff's website to be a registered user for the terms, as well as the arbitration provision to apply.  (See Declaration of Timothy Coughlan, Esq. (hereinafter "Decl. Coughlan"), ¶ 2, Ex. A, page 1).

## Terms of Use

Last Updated: 02/05/2018

Your access to and the use of Jersey Mike's website is subject to the following terms and conditions, "Terms", as well as all applicable laws. In consideration for making our website available to you, you agree to comply by these Terms, whether or not you are a registered user.

The Terms of Use define the scope broadly.  If anyone accesses Plaintiff's website, the terms and conditions apply.  *Id*.  Contained in these terms and conditions is a class action waiver and arbitration agreement.  The scope of this arbitration agreement is also extremely broad, including the scope of the arbitration demands filed by Claimants.

## Mandatory Dispute Resolution for Registered Users (Individual Arbitration; No Court Trial; No Jury; No Class Action)

Claims

(Decl. Coughlan, ¶ 2, Ex. A, page 4).

Any legal or equitable dispute between you and JMFS and/or its franchisees ("we" or "us") relating in any way to this Website is a "Claim". For example, Claims can arise under federal or state law. Claims can assert violations of statute, breach of contract, torts, frauds, or misrepresentations. Those are just examples. Any dispute which could form the basis of a legal Complaint in a courtroom is a Claim.

Excepted Claims

Individual claims that can be brought and completely resolved in small claims court and/or claims related to the ownership of JMFS intellectual property are "Excepted Claims".

Covered Claims

All Claims, other than Excepted Claims, are Covered Claims.

AAA as Arbitrator

You and we agree to mandatory, binding arbitration of Covered Claims by the American Arbitration Association ("AAA"). More information about AAA can be found at https://www.adr.org/Arbitration.

Any arbitration must be filed with AAA at https://www.adr.org/Support or by such means as AAA shall make available. All issues are for AAA to decide, except that disputes relating to the scope, application, and enforceability of these Mandatory Dispute Resolution Terms are for a Court to decide (if you and we cannot agree).

(Decl. Coughlan, ¶ 2, Ex. A, page 5).

The claims Plaintiffs are seeking to avoid in arbitration fit squarely within the scope of the terms and conditions. Claimants take issue with Plaintiff's illegal use of Meta pixels contained on its website, spying on Claimants without knowledge or consent. Plaintiffs cannot say these claims do not fall within the language of, "[a]ny legal or equitable dispute between you and JMFS and/or its franchisees ("we" or "us") **relating in any way to this Website** is a "Claim". *Id*. (emphasis added).

Putting aside the broader scope of the terms and conditions, both Claimants were registered users of Plaintiff. A copy of the operative terms and conditions are attached hereto

5

as Ex. A.[1]  (Decl. Coughlan, ¶ 2, Ex. A).  Even if Plaintiffs were to claim that Claimants were required to be registered users for the terms and conditions to apply (which is an absurd reading), each Claimant had previously registered their phone numbers with Plaintiff, would receive text messages and would receive reward points for prior purchases.  (Decl. Coughlan, ¶ 5).

## **STANDARD OF REVIEW**

The standard of review on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction varies depending on whether the defendant makes a facial or factual challenge.  *See Gould Elecs., Inc. v. U.S*., 220 F.3d 169, 176 (3d Cir. 2000).  "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *Id*.  In contrast, in reviewing a factual challenge, the allegations of the complaint are not accepted as true, and "the court may consider evidence outside of the pleadings."  *Id*.  In evaluating motions to dismiss, a court may consider the complaint, exhibits attached to the complaint, matters of public record. and undisputedly authentic documents if the plaintiff's claims are based upon those documents.  *See Pension Benefit Guar. Corp. v. White Consol. Indus*., 998 F.2d 1192, 1196 (3d Cir. 1993); *U.S ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506 (3d Cir. 2007).  Furthermore, "[w]hen subject matter

---

[1] It is important to point out that Plaintiff changed its terms and conditions after Claimants initiated arbitration with AAA.  A comparison has not been made, but it is apparent that the arbitration provider has been changed from AAA to JAMS.

jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005).

## ARGUMENT

### I.  THE COURT HAS NO JURISDICTION OVER THE ADMINISTRATION OF AN ARBITRATION UNTIL AFTER THE FINAL AWARD

Plaintiff asks the Court to control the AAA Arbitrators' administration of Claimants' pending Arbitrations. As discussed below, the Court should refrain from issuing any orders that impact the substance of any pending arbitration because, with all due respect, the Court has no jurisdiction to accept the Plaintiff's invitation to act as referee of the Arbitrations at this stage in the proceedings and this court lacks subject matter jurisdiction to hear this arbitrable dispute. A court's jurisdiction over a pending arbitration is limited to a review of the arbitrator's final award, which has not occurred. At this point, however, any intervention by the Court is premature and lacks jurisdiction.

This issue was addressed in *Gulf Guaranty Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*, 304 F.3d 476 (5th Cir. 2002), which involved two parties to a contractual arbitration agreement. The case was originally filed in federal district court, but was compelled to arbitration, and the case was stayed. *See id*. at 480-81. A dispute arose about the selection of arbitrators, and Gulf Guaranty filed a second suit in district court claiming breach of the arbitration agreement. *See id*. Arbitration was again compelled and the second suit was dismissed (giving the Fifth Circuit jurisdiction to hear the appeal). *See id*. The court reviewed the claims of the second suit (breach of the arbitration agreement and conspiracy). *See id*.

The court explained that these were the types of claims for damages that arise from the alleged failure or breach of the agreed arbitral process and that there was no authority for a court to intervene in the process while a valid and enforceable arbitration agreement exists, pursuant to the FAA. *See id*. at 486-88.

The FAA affords limited jurisdiction for a court to intervene in an arbitration proceeding prior to the issuance of an award. *See, e.g., Festival Fun Parks, LLC v. Mountain Creek Resort, Inc.*, 2015 WL 758467, at *8 (D.N.J. Feb. 23, 2015) (relying on authorities recognizing that "judicial review was unavailable where arbitrators made an interim ruling that did not conclusively resolve the submitted issues," and that "judges must not intervene in pending arbitration[s] to direct arbitrators to resolve an issue one way rather than another") (citations and internal quotation marks omitted). Challenges to the procedural aspects of arbitration are for the arbitrator to decide, whereas challenges to the substantive arbitrability of disputes are for the courts to decide. *See Gulf Guaranty*, 304 F.3d at 487. Objections to the nature of arbitral proceedings are for the arbitrator to decide in the first instance, and fairness objections should generally be made to the arbitrator subject only to limited post-arbitration judicial review as set forth in section 10 of the FAA. *See Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 940-41 (4th Cir. 1999).

In reversing the removal of arbitrators deemed to be unqualified under an arbitration agreement, courts have explained that the congressional purpose of the FAA is to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and as easily as possible." *Gulf Guaranty*, 304 F.3d at 489 (*citing Moses H. Cone Hosp. v. Mercury Constr.*

*Corp.*, 460 U.S. 1, 22 (1982)).  The FAA does not authorize a court to remove an arbitrator prior to the issuance of an arbitral award but only to intervene in the process and select an arbitrator upon application of a party if the parties fail to avail themselves of a method for arbitrator selection or if there is a lapse in naming of an arbitrator.  *See id.*; 9 U.S.C. § 5. Additionally, the FAA does not provide a basis to remove an arbitrator from service, even when there is arbitrator bias.  Instead, the exclusive remedy is expressed in 9 U.S.C. § 10 as a vacatur of any award.  *See Gulf Guaranty*, 304 F.3d at 490.

Furthermore, inasmuch as a prime objective of arbitration law is to permit a just and expeditious result with a minimum of judicial interference, any other such rule could spawn endless applications to the courts and indefinite delay, and otherwise there would be no assurance that the party seeking removal would be satisfied with the removed arbitrator's successor and would not bring yet another proceeding to disqualify him or her.  *See Marc Rich & Co. v. Transmarine Seaways Corp.*, 443 F. Supp. 386, 387-88 (S.D.N.Y. 1995).  The same principles apply to the present case.

Plaintiff's Complaint of unfair procedure goes to the process of arbitration, not the substance of the arbitration agreement, and thus Plaintiff may not, as they attempt, challenge the AAA arbitrators' choice of the Consumer Rules as being fundamentally unconscionable. It is important to point out Plaintiff drafted the operative terms and conditions and created the contractual relationship with Claimants.  The arbitrator is afforded the sole discretion to determine the proceedings.  Now that Plaintiff is not happy with the procedural posture and AAA's initial determinations, it inappropriately seeks relief from this court.  It is only after an

award that a plaintiff has any right to seek relief with the trial court pursuant to 9 U.S.C. § 10. Until that time, a trial court's intervention into the arbitration proceedings is beyond its jurisdiction and authority.

Moreover, even if the AAA Arbitrators erred in construing the Arbitration Agreement to allow application of the Consumer Rules or California law in the manner in which the Arbitrators applied them, the United States Supreme Court has held that under the FAA, courts may not overrule an arbitrator simply because its interpretation of the contract is different from his. *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 573 (2013) ("All we say is that convincing a court of an arbitrator's error--even his grave error--is not enough. So long as the arbitrator was "arguably construing" the contract--which this one was--a court may not correct his mistakes under § 10(a)(4). . . . The arbitrator's construction holds, however good, bad, or ugly.") (internal citation and quotation marks omitted).[2]

---

[2] Plaintiff's arguments with respect to AAA's conduct in connection with the Arbitrations are also baseless on their face. Contrary to what Plaintiff asserts, the Arbitration Agreement contained in the Terms of Use did not require that arbitrable disputes be subject to New Jersey law, nor did it require the application of the Commercial Arbitration Rules ("Commercial Rules"). While the Terms of Use state that they are governed by New Jersey law, they do not indicate what law would apply to any arbitrable dispute relating to the website and not predicated on a violation of the Terms of Use themselves. Furthermore, although Plaintiff annexes a brief that it submitted to AAA arguing that the Commercial Rules rather than the Consumer Arbitration Rules ("Consumer Rules") should apply and reciting language of the arbitration clause on this issue, the Terms of Use in effect at the time themselves state only that "AAA will adjudicate the Covered Claims in accordance with its Commercial Arbitration Rules *and the Supplementary Procedures for Consumer Related Disputes*." *See* Decl. Coughlan, Ex. A (emphasis added). In any event, even Plaintiff concedes that AAA could apply the Consumer Rules under some circumstances, but Plaintiff merely disagrees with AAA's decision not to use the Commercial Rules in the Arbitrations between individual consumers and Plaintiff arising from Plaintiff's practice of facilitating Meta's wiretapping in violation of federal and state privacy rights.

## II.   PLAINTIFF MAY NOT EVADE ITS OWN ARBITRATION AGREEMENT BY ASKING THIS COURT TO ADJUDICATE THE DISPUTES IN THE ARBITRATIONS

As this reflects, the claims against Claimants amount to collateral attacks on the merits of their own otherwise arbitrable disputes with Plaintiff in the Arbitrations over alleged violations of the federal Wiretap Act and CIPA.  Plaintiff has instituted this action in response to the claims in the Arbitrations asserting infringements on Claimants' privacy rights under these federal and state laws.

Each of Plaintiff's claims against Claimants are premised on the argument that Claimants never consented to Plaintiff's disclosure of their communications on its website to Meta through the Meta Pixel tracking software Plaintiff installed on that website, and that Claimants are seeking to challenge and modify Plaintiff's disclosure practices under federal and state wiretapping laws even though those practices were purportedly authorized under Meta's privacy policies regarding off-Facebook website activities.  However, consent is an affirmative defense to the federal Wiretap Act and CIPA claims that requires resolution of factual questions, in arbitration.  *Brown v. Google LLC*, 525 F.Supp.3d 1049, 1063 (N.D. Cal. 2021) (Defendant carries the ultimate burden of proving a consent defense).  Plaintiff's action thus seeks to evade the resolution of these claims and defenses in the Arbitrations by asking this Court to adjudicate state law contract and tort claims denying that Plaintiff illegally shared the content of its website users' communications with Meta for Meta's own commercial purposes.  There exists no independent subject matter jurisdiction over those contract claims.

Even where, unlike here, a plaintiff does not seek monetary relief, courts have still recognized that claims of this sort that essentially seek to adjudicate "the key substantive questions at issue in the [underlying] dispute" between the parties impermissibly "permit a party to obtain from a court essentially the same relief as that otherwise reserved for the arbitrator" in spite of a "sweeping arbitration provision." *Information Sys. Audit and Control Assoc., Inc. v. Telecommunication Sys., Inc.*, 2017 WL 2720433, at *4 (N.D. Ill. June 23, 2017). *See also, e.g., Clarus Med., LLC v. Myelotec, Inc*., 2005 WL 3272139, at *4 (D. Minn. Nov. 30, 2005) ("[T]o determine whether declaratory relief is appropriate, the Court would need to interpret terms of the License and wade into the merits of the underlying dispute. . . . [I]f the Court were to adjudicate Clarus's requests for declaratory relief, the Court would, in effect, read out the broad arbitration clause of section 20(a) . . . .  [S]o long as a claim was disguised as a declaratory judgment action, that claim could be brought before a court and thus circumvent the very broad language of the arbitration clause.").

Placing these issues within the court's purview would run counter to the Arbitration Agreement's purpose, which is precisely to avoid the time and expense associated with litigation. *See, e.g., Preston v. Ferrer*, 552 U.S. 346, 357 (2008) ("A prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.'") (*quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 633 (1985)); *Merit Ins. Co. v. Leatherby Ins. Co*., 714 F.2d 673, 683 (7th Cir. 1983) (noting that the "purpose of the United States Arbitration Act" is to "mak[e] arbitration a swift, inexpensive, and effective substitute for judicial dispute resolution").

12

To the extent Plaintiff's claims against Claimants are based upon their use of Plaintiff's website and the subsequent commencement of the Arbitrations alleging violations of the federal Wiretap Act and CIPA, those claims are intimately related to the merits of Claimants' Arbitrations.  Therefore, the Court lacks subject matter jurisdiction over Plaintiff's claims based on Claimant's pursuit of the Arbitrations, and such claims based on Plaintiff's use of the website and pursuit of those Arbitrations should be pursued via Plaintiff's own Arbitration Agreement in its Terms of Use.  There simply is no federal question surrounding the arbitrability of the contract claims at issue.

## III.   THIS CASE DOES NOT CONCERN A DISPUTE RELATING TO THE SCOPE, APPLICATION, AND ENFORCEABILITY OF THE ARBITRATION AGREEMENT BUT AT MOST INVOLVES A QUESTION OF WHETHER A CLAIM IS ARBITRABLE

Even assuming, *arguendo*, that this Court could intervene at this stage in pending arbitration proceedings to adjudicate a dispute relating to "the scope, application, and enforceability of" the Arbitration Agreement's terms, Plaintiff's purported dispute over the arbitrability of a specific dispute based on whether or not Claimants are "registered users" cannot be enough to support subject matter jurisdiction on this ground.  Plaintiff does not deny that the claims asserted in the Arbitrations fall within the scope of the Arbitration Agreement insofar as those claims relate to Plaintiff's website.  Based on the terms and conditions Claimants do not need to be registered users for the arbitration agreement to apply.  (Decl. Coughlan, ¶ 2, Ex. A, page 1, 4, and 5).  All disputes over Plaintiff's website must go to arbitration.  Id.

Instead, Plaintiff's entire argument is that Claimants never assented to the Arbitration Agreement because they did not create accounts prior to ordering from Plaintiff or otherwise accessing its website.  This is not required, but assuming the validity of Plaintiff's argument, both Claimants were registered users. Decl. ¶ 5.  Plaintiff has consistently acknowledged the Terms of Use—including the Arbitration Agreement incorporated therein—as a valid contract and is now suing for breach of those Terms of Use.  Plaintiff's belated, self-serving allegations that Claimants were not "registered users" does not implicate the scope or validity of the Arbitration Agreement or create jurisdiction here.  Nor does this dispute over the terms of the arbitration agreement somehow convey federal subject matter jurisdiction over this controversy.  The requirements of 28 U.S.C. § 1331 are not met.

As an initial matter, Plaintiff does not allege that it previously raised the issue of whether Claimants were bound by the Terms of Use (including the Arbitration Agreement contained therein) as a result of assenting by becoming registered users (i.e. creating a new account).  Indeed, the materials annexed to the Complaint merely indicate that Plaintiff sought to have the Commercial Rules and not the Consumer Rules applied to the Arbitrations.  See Complaint, Ex. A.  Even now, as further discussed below, Plaintiff presumes that Claimants manifested assent to the Terms of Use and acted in violation of those requirements through Claimants' use of Plaintiff's website and filing of the Arbitrations.

A party waives its right to challenge the arbitrators' authority to decide a matter where it voluntarily participates in the arbitration of that matter without objecting to the arbitrators' authority to decide that matter.  *See United Indus. Workers v. Government of Virgin Islands*,

987 F.2d 162, 168-69 (3d Cir. 1993) (refusing to "give the Union two bites at the apple, arbitration and litigation, to obtain a favorable outcome" because it had waived its right to challenge the arbitrator's authority to decide that matter); *see also Conntech Dev. Co. v. Univ. of Connecticut*, 102 F.3d 677, 685 (2d Cir. 1996) (noting that "[a]n objection to the arbitrability of a claim must be made on a timely basis, or it is waived"); *Teamsters Local Union v. J.H. Merritt & Co.*, 770 F.2d 40, 42-43 (3d Cir. 1985) (holding that party who voluntarily participates in an arbitration, without objecting, waives its ability to challenge the arbitrator's authority); *Jones v. Dairy Farm v. Local No. P-1236*, 760 F.2d 173, 176 (7th Cir. 1985) (finding that by submitting to an arbitrator's jurisdiction without objection, the party has "admitted the competence of the arbitrator to determine its 'legal rights,' [and] it cannot complain that the arbitrator exceeded his authority by determining them") (citation omitted). Plaintiff did not object to the arbitration filings and began participating in the process.  It was only after it received initial rulings that the consumer rules would apply that it changed its view on the arbitration proceedings and wanted to change the provider to JAMS in place of AAA.  By participating Plaintiff has already waived its right to challenge the proceedings.

Furthermore, even if Plaintiff had not waived this objection to Claimants' arbitrations with AAA, Plaintiff still has failed to assert a plausible basis for invoking this Court's jurisdiction to resolve this contract dispute.  Plaintiff relies exclusively upon language in the Arbitration Agreement stating that the Court may decide objections with respect to the "scope, application, and enforceability" of the Agreement, and Plaintiff asserts that "[s]cope, application, and enforceability are issues of arbitrability."  Complaint, ¶¶ 12, 60-61, 64, 93,

15

104, 111, 120, 133, and 134. But this does not grant this court (a court of limited jurisdiction) subject matter jurisdiction.

However, as the Third Circuit has recognized, disputes over arbitrability are different than disputes over the "scope" or "validity" of an arbitration agreement, and where, as here, the agreement provides that the arbitration shall be subject to the Rules of the AAA and does not make an exception regarding "the arbitrability of any claim or counterclaim," the agreement manifests a clear intent to empower the arbitrator to resolve "any objections" over the arbitrability of a dispute. *See Richardson v. Coverall N. Am*., 811 Fed. Appx. 100, 103-04 (3d Cir. 2020) (noting that where an arbitration agreement states that the AAA Rules govern the arbitration of the underlying dispute between the parties, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement *or to the arbitrability of any claim or counterclaim*") (emphasis added).

The AAA Rules incorporated into the Arbitration Agreement thus expressly differentiate between objections as to the "scope," application, or enforceability of the arbitration agreement and objections to the "arbitrability of any claim or counterclaim." Ordinarily, the arbitrator would finally resolve both types of jurisdictional objections, but in this case, the Arbitration Agreement authorizes the parties to bring a judicial proceeding to resolve disputes over the "scope, application, and enforceability" of the Agreement (i.e. disputes over the existence of an Arbitration Agreement. However, because the Agreement does not state that the parties may bring a judicial proceeding to resolve disputes over the

16

arbitrability of a claim or counterclaim, the AAA Rules apply as a default and arbitrability disputes should be resolved by the arbitrator.

It is a fundamental principle of contract law that, all other things being equal, contracts are to be construed against the drafter. *See Terminal Construction Corp. v. Bergen County Hackensack River Sanitary Sewer Dist. Authority*, 18 N.J. 294, 302, 113 A.2d 787 (1955). Here, Plaintiff itself drafted the Terms of Use and its Arbitration Agreement and fully controlled the wording of that Agreement.  Under the circumstances, any ambiguity in the Arbitration Agreement on the issue of whether the arbitrability of specific claims was delegated to AAA should be construed against Plaintiff, and the Court should find that Plaintiff manifested a clear intent to be bound by AAA's determinations regarding arbitrability of claims under Plaintiff's own Arbitration Agreement.

Finally, even if this Court had independent jurisdiction under some circumstances to consider the arbitrability of Claimants' claims involving Plaintiff's website and Plaintiff's practices of sharing information with Meta using the Pixel software installed on that website, Plaintiff's sole basis for contending that the dispute is outside of or not subject to the Arbitration Agreement and thus not arbitrable is to essentially deny the existence of a contract under which Claimants accepted the Terms of Use, including its Arbitration Agreement.  Yet, at the same time, Plaintiff asserts that Claimants breached those same Terms of Use, which Claimants could only have done by assenting to those provisions through registration. Plaintiff cannot have it both ways, and there is nothing in the Arbitration Agreement itself that gives the Court jurisdiction to adjudicate a non-existent formation challenge.

Specifically, Plaintiff alleges that under the Terms of Use, it agreed to arbitrate disputes only with "registered users" and that, upon investigation, Plaintiff "has been unable to find the name of either Lahr or Augustine ever registering as a user" and "[s]ince neither Augustine nor Lahr ever used or registered their names on the website, neither is a properly registered user." Complaint, ¶¶ 95-100. Plaintiff further asserts that "the issue of whether Augustine or Lahr ever became registered users" is properly reviewable by this Court because that issue involves "a 'dispute[ ] regarding the [ ] application' of the Arbitration Agreement." *Id.* at ¶¶ 101-04.

However, as Plaintiff does not dispute, Claimants asserted in their arbitration demands that they were registered users. They became registered users by entering their cellular telephones with Plaintiff at their respective store. See Decl. Coughlan, ¶ 5. Under either set of facts the scope of the terms and conditions (registered user v. non-registered user), apply to Plaintiff and Claimants.

Not only does Plaintiff not dispute that Claimants were users of the website but it seeks to hold them liable for breaching the website's Terms of Use. See Complaint, ¶¶ 160-221 (asserting various claims against Claimants for violating the Terms of Use in using the website and bringing the Arbitrations against Plaintiff). Because Plaintiff has not "unequivocally denied" entering into the Arbitration Agreement with Claimants, Plaintiff has failed to put the making of the agreement at issue, and discovery is inappropriate. *Loewen v. Lyft, Inc.*, 2015 WL 12780465, at *5 (N.D. Cal. June 12, 2015). Plaintiff may not also dispute whether

Claimants used Plaintiff's website as a means of raising a challenge to arbitrability of certain user claims in federal court.

Plaintiff cannot avoid arbitration by making a "self-serving, conclusory declaration" or statement "claiming not to recall [Claimants] ever signing an agreement to arbitrate." *Sundquist v. Ubiquity, Inc.*, 2017 WL 3721475, at *4 (S.D. Cal. Jan. 17, 2017) (citation omitted);  *see also, e.g., Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 999 (N.D. Cal. 2017) (rejecting a challenge to an Uber engineer's declaration where plaintiff "offer[ed] no evidence to rebut [Uber's] reasoned declaration other than his own conclusory allegations that he never received notice of the terms and conditions" and thus "raise[d] no genuine dispute of any material fact").  The terms and conditions which apply to the access and use of Plaintiff's website are operative and control.

## **CONCLUSION**

The claims giving rise to this federal action arise solely out of contract.  This court being a court of limited jurisdiction should find there is no subject matter jurisdiction to hear any claimed controversy.  Based on the terms and conditions presented and agreed to on Plaintiff's website, all controversies must be resolved through binding arbitration.   Simply because Plaintiff is not happy with the preliminary rulings of the arbitrator Plaintiff contractually selected does not give Plaintiff the right now to challenge its own contract, let alone in this improper forum.  This case should be dismissed for lack of subject matter jurisdiction with instructions for Plaintiff to proceed through arbitration, as agreed.

Dated:   August 17, 2023

Respectfully submitted,

**MARON MARVEL BRADLEY
ANDERSON & TARDY LLC**

BY:   s/ Timothy Coughlan
          Timothy Coughlan
          Harborside Plaza 10
          3 Second Street, Suite 202
          Jersey City, NJ 07311
          **Attorneys for Defendants
          Ophelia Augustine and Cecelia
          Lahr**