<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **JERSEY MIKE'S FRANCHISE SYSTEMS, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**AMERICAN ARBITRATION ASSOCIATION, INC., OPHELIA AUGUSTINE, CECILIA LAHR, and ALEXANDER LUCE,**<br><br>Defendants. | Civ. 23-03444 (ZNQ) (TJB)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

      **THIS MATTER** comes before the Court by a Motion to Dismiss ("MTD", ECF No. 39) filed by Defendants Ophelia Augustine ("Augustine"), Cecelia Lahr ("Lahr"), and Alexander Luce ("Luce"), (together the "Claimants" or "Individual Defendants")[1] the First Amended Complaint ("FAC," ECF No. 22) filed by Plaintiff Jersey Mike's Franchise Systems ("Plaintiff" or "Jersey Mike's").  In support of the MTD, Individual Defendants filed a brief alleging lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1) ("MTD Br.," ECF No. 39-3).  Plaintiff opposed ("Opp.," ECF No. 51) and the Individual Defendants replied ("Reply," ECF No. 54).  The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78 and Local Civil

---

[1] The American Arbitration Association ("AAA", together with the Individual Defendants, the "Defendants") is also a Defendant in this matter.  The AAA is not a party to this Motion to Dismiss.  The AAA has asked for and been granted four extensions of time to respond to the FAC, pending resolution of the question of subject matter jurisdiction raised by the Individual Defendants' motion to dismiss.  (ECF No. 58.)

Rule 78.1.  For the reasons set forth below, the Individual Defendants' Motion to Dismiss will be **GRANTED** and all claims against the AAA will be **DISMISSED** with prejudice, and claims against the Individual Defendants will be **DISMISSED** with prejudice in part and **DISMISSED** without prejudice in part.

## I.       BACKGROUND AND PROCEDURAL POSTURE

The Court will take all of Plaintiff's facts as alleged in the complaint as true for purposes of this motion.[2]  Where necessary, the Court construed ambiguities in the light most favorable to the Plaintiff.  Plaintiff Jersey Mike's brings this action against Defendants for monetary and injunctive relief based on breach of contract, indemnification, and declaratory judgment on Plaintiff's rights pursuant to Jersey Mike's Terms of Use ("Terms of Use") governing access to Plaintiff's website, www.jerseymikes.com.  (FAC ¶¶ 1, 17, 24.)  Plaintiff is headquartered in

---

[2] The Court notes Plaintiff's request for the Court to strike what it calls "purported facts" and arguments from Defendants' Motion to Dismiss.  (Opp. at 12.)  The Court confirms it has applied the standard for facial attacks under 12(b)(1) to this motion and has not considered Defendants' facts outside the FAC.

The Court does, however, take judicial notice of the Terms and Conditions attached to Defendants' Motion to Dismiss as Exhibit A.  ("Terms of Use," ECF No. 39-2.)  Plaintiff has brought this action as a "breach of contract" action based on "Plaintiff's rights pursuant to a contract (the 'Terms and Conditions of Use')."  (FAC ¶ 1.)  Throughout the FAC Plaintiff quotes extensively from the Terms of Use.  (*See generally* ECF No. 22.)  "In a breach of contract action, the original underlying contract may be considered because that document is integral to or explicitly relied upon in the complaint."  *Enrunda Trading Co. v. MTM Trading LLC*, Civ. No. 17-3763, 2018 WL 11241079, at *4 n.6 (D.N.J. Mar. 29, 2018); *see also In re Michaels Stores*, Inc., 2017 WL 354023, at *2 (D.N.J. Jan. 24, 2017) (In a Rule 12(b)(1) motion "[t]he court may consider documents relied upon by the complaint.") (citing *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  Plaintiff has not disputed the authenticity of Defendant's Exhibit A.  (*See generally* Opp.)  "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993).

Further, Plaintiff references its own attached "Exhibit A" in the FAC at ¶¶ 79. 80, 86 but the Court can see no such document attached.  Plaintiff's Opposition appears to confirm Defendant's position that the references in the FAC refer to the Exhibit A attached to Plaintiff's original Complaint.  (ECF No. 1 at 32-36; Opp. at 14-15.)  Considering Plaintiff's repeated citation to the Exhibit, the Court will construe Exhibit A as a document attached to and relied upon in the FAC, as it appears to be a scrivener's error that it was not reattached when the complaint was amended.  (Opp. at 14-15, 39; MTD Br. at 23 n.2.)

Manasquan, New Jersey.  (*Id.* at 1 n.1.)[3]  The Individual Defendants are California residents.  (*Id.* at 1 nn.2-4.)  The AAA is headquartered in New York.  (*Id.* at 1 n.5.)

Plaintiff states this Court has jurisdiction over this action based on federal question jurisdiction, 28 U.S.C. § 1331 "as Plaintiff seeks to enforce its rights under the Federal Arbitration Act [("FAA")], 9 U.S.C. § 1, *et seq.*"  Plaintiff also states the District Court has jurisdiction under diversity jurisdiction, 28 U.S.C. § 1332 as there is complete diversity of the parties and the amount in controversy is greater than $75,000.  (FAC ¶ 33.)

The Individual Defendants each filed an arbitration with the AAA (the "AAA Arbitrations") against Plaintiff asserting violations of the federal Wiretap Act 18 U.S.C. § 2510 *et seq.* (the "Wiretap Act") and the California Invasion of Privacy Act ("CIPA") Cal. Penal Code § 631.[4]  Jersey Mike's website includes a binding Arbitration Agreement, contained in the website's Terms of Use.  (FAC ¶ 1; "Terms of Use," ECF No. 39-2.)  A link to the Terms of Use "is on every page of Plaintiff's website."  (FAC ¶ 7.)  Plaintiff alleges these arbitrations are "meritless" since any disputed conduct is disclosed within the website's Privacy Policy, and that Individual Defendants are not able to bring Arbitrations against it and have violated the Terms of Use by doing so, constituting a breach of contract.  (FAC ¶¶ 3, 5, 8, 24.)

First, Plaintiff alleges the AAA failed to apply the Arbitration Agreement to the arbitrations by applying its Consumer Arbitration Rules ("Consumer Rules") instead of its Commercial Arbitration Rules ("Commercial Rules"), resulting in additional fees to the Plaintiff, breaching the contract between Plaintiff and the AAA, and exceeding the AAA's authority.  (*Id.* ¶¶ 10-13.)  Plaintiff also alleges the AAA failed to apply the Arbitration Agreement by administering the

---

[3] Page numbers (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[4] The Court could not find statutory references in the Complaint but understands from review of Plaintiff's Opposition motion that it intended to refer to these specific statutes. (ECF No. 51 at 19.)

arbitrations in California rather than in New Jersey, and against the terms of the Arbitration Agreement is refusing to preclude California law claims.  (*Id.* ¶ 15.)  Plaintiff alleges AAA further erred refusing to stay the AAA arbitrations pending resolution of this action unless the Individual Defendants consented or Plaintiff filed a motion to stay with the arbitrator, thereby waiving its rights to object to the arbitrator appointment or the participation of the Claimants under the incorrect rule set.  (*Id.* ¶ 15.)  Plaintiff argues that under the Arbitration Agreement the Court must substitute itself or, at the least, another arbitral forum for the AAA in the ongoing disputes because of AAA's failures to properly apply the Arbitration Agreement.  (*Id.* ¶ 9.)  Plaintiff accuses the AAA of "unlawfully compelling parties to expand AAA's jurisdiction in contravention of express language in arbitration agreements that make the issues of arbitrability non-arbitrable."  (*Id.* ¶ 22.)

A.    **The Terms of Use**

Jersey Mike's alleges the arbitrations filed by "at least two" of the Individual Defendants are merely "the latest" in a "series of frivolous lawsuits for many years with the same counsel as they have in the [AAA] Arbitrations."  (*Id.* at ¶ 2.)  Plaintiff characterizes the arbitrations as part of the Individual Defendants' "ongoing scheme to generate nuisance-value settlements and legal fees."  (*Id.*)  Plaintiff alleges the arbitrations against it are meritless.  (*Id.* ¶ 3.)  Plaintiff alleges that although the Individual Defendants filed their claims with the AAA based on the arbitration agreement included in the Terms of Use, "the Arbitration Agreement is inapplicable to and unenforceable by Claimants because Claimants are not 'registered users.'"  (Id. ¶ 8.)  This means that "Claimants' disputes are not arbitrable."  (*Id.*)

The Terms of Use governs access to and use of Jersey Mike's website, and states that by accessing Jersey Mike's website, a user "agree[s] to comply by these Terms, whether or not [they] are a registered user."  (FAC ¶¶ 58-59.)  The Terms of Use define "Registered Users" as someone

4

"who register[s] for communications by text or e-mail, or who register[s] for online accounts, or provide[s] information to order food, gift cards, or merchandise as a guest." (*Id.* ¶ 62.)  The Terms of Use states that for Registered users "these terms also include an agreement to resolve all disputes only one-on-one, in **<u>arbitration</u>** (no court trial, no jury trial, no class actions)." (*Id.* ¶ 63) (emphasis in original).   The section on Registration states "[w]hen you provide us with information, you agree that any personal information provided to us is complete and accurate." (Terms of Use at 2.)

The Terms of Use state that the Terms are governed by the laws of New Jersey and that any disputes arising between a user and Jersey Mike's shall be decided by a court located in Monmouth County, New Jersey, "unless subject to the Mandatory Dispute Resolution terms for Registered Users below."  (FAC at 63.)  The Terms of Use also contain an indemnification provision in which the user agrees "to defend, indemnify, and hold harmless Jersey Mike's . . . from any and all liabilities and costs . . . in connection with any claim arising from any breach by you of these Terms."  (Terms of Use at 4.)  This indemnification includes "reasonable attorneys fees and costs." (*Id.*) The user "agree[s] to cooperate as fully as may be reasonably possible in the defense of any such claim." (*Id.*)  Jersey Mike's "reserves the right to assume, at its own expense, the exclusive defense and control of any matter otherwise subject to indemnification" by the user. (*Id.*)  Finally, "[t]his duty does not include any liabilities or costs which arise as a result of intentional wrongdoing, recklessness, or negligence on the part of the indemnified parties." (*Id.*)

The Terms of Use's Arbitration Agreement is titled "Mandatory Dispute Resolution for Registered Users (Individual Arbitration; No Court Trial; No Jury; No Class Action." (*Id.* at 5-6; FAC ¶ 65.)  It specifies that any "legal or equitable dispute between [a registered user] and [Plaintiff] relating in any way to this Website is a 'claim.'" (Terms of Use at 6; FAC ¶ 67.)  It

specifies that "[a]ny dispute which could form the basis of a legal Complaint in a courtroom is a Claim" and gives examples including assertions of "violations of statute, breach of contract, torts, frauds, or misrepresentations." (Terms of Use at 6.) The Arbitration Agreement clarifies "[t]hose are just examples." (*Id.*) The only excepted claims are individual claims that can be entirely resolved in small claims court and/or claims related to the ownership of intellectual property. (*Id.*) "All Claims, other than Excepted Claims, are Covered Claims." (*Id.*) The Arbitration Agreement states that "[a registered user] and [Plaintiff] agree to mandatory, binding arbitration of Covered Claims by the [AAA]." (FAC ¶ 66.)

The Arbitration Agreement requires "[a]ny arbitration must be filed with the AAA" and that all issues are for the AAA to decide "except that disputes relating to the scope, application, and enforceability of these Mandatory Dispute Resolution Terms are for a Court to decide." (FAC ¶ 69.) Registered users agree to be subject to the personal jurisdiction of state and federal courts "surrounding" Monmouth County, New Jersey to (1) enforce the Arbitration Agreement, (2) address disputes "regarding the scope, application, and enforceability" of the Arbitration Agreement, (3) appoint a substitute arbitrator, and (4) enter an arbitration award. (FAC ¶ 70.)

The "Rules to Apply" section of the Arbitration Agreement states, "AAA will adjudicate the Covered Claims in accordance with its Commercial Arbitration Rules[5] and the Supplementary Procedures for Consumer-Related Disputes[6]." (Terms of Use at 6; FAC ¶ 68.) The Commercial

---

[5] The Court takes judicial notice of the AAA Commercial Rules ("Commercial Rules") current as of today's date. American Arbitration Association *Commercial Arbitration Rules and Mediation Procedures as Amended September 1, 2022* (May 30, 2024 at 5:27 PM), https://www.adr.org/sites/default/files/Commercial-Rules_Web.pdf. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (The Third Circuit has said a court may consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.") The claims against the AAA are based upon the substance of the AAA rules as applied to the arbitrations, and the document is both public and indisputably authentic.
[6] The Court takes judicial notice of the AAA Consumer Arbitration Rules ("Consumer Arbitration Rules") current as of today's date. American Arbitration Association *Consumer Arbitration Rules as Amended September 1, 2014* (May 30, 2023 at 6:23 PM), https://www.adr.org/sites/default/files/Consumer-Rules-Web_0.pdf. *Mayer*, 605 F.3d at 230. The claims against the AAA are based upon the substance of the AAA rules as applied to the arbitrations, and

Rules specify that as of "June 1, 2021, the AAA will apply the Consumer Arbitration Fee Schedule to any dispute between an online marketplace or platform and an individual user . . . and the dispute does not involve work or work-related claims." Commercial Rules at 10. On September 14, 2014 the AAA's Supplementary Procedures for Consumer-Related Disputes were amended and renamed the Consumer Arbitration Rules. (Consumer Arbitration Rules at 9.) The final section of the Terms of Use states that if the AAA "cannot or will not perform arbitration in accordance with the provisions of this agreement" the parties can either agree to another arbitrator, or "a court shall appoint one" according to the FAA, 9 U.S.C. § 5. (FAC ¶ 72.)

**B.     The AAA Arbitrations**

Augustine filed the first AAA arbitration in February, 2023 alleging Plaintiff violated the federal Wiretap Act and CIPA by "intercepting and recording [Augustine's] electronic communications with Respondent's website then disclosing the information [Plaintiff] acquired to Meta Platforms Inc. dba Facebook." (*Id.* ¶¶ 77-78.) Plaintiff objected to Augustine's filing of the case under the Consumer Rules rather than the Commercial Rules. (*Id.* at 79 (citing Exhibit A, ECF No. 1 at 32-36).) Plaintiff's briefing does not reference the application of the Supplementary Procedures for Consumer Related Disputes. (*See generally* FAC.)

Plaintiff rejected Augustine's proposal that an initial arbitrator be appointed under the Consumer Rules on a prima facie basis who would then determine which set of rules should be applied to the case for the remainder of the action, on the basis that the AAA as a case administrator should be making those determinations prior to the appointment of the arbitrator. (Exhibit A at 32-34.) Plaintiff alleges it was subject to several unexpected fees because of AAA's choice to

---

the document is public and indisputably authentic. On September 14, 2014 the AAA's Supplementary Procedures for Consumer-Related Disputes were amended and renamed the Consumer Arbitration Rules. (Consumer Arbitration Rules at 9.)

apply the Consumer rules, including: (a) a $600 registration fee for the Arbitration Agreement (termed, in this context, a consumer agreement), (b) a $300 expedited review fee for review of the Arbitration Agreement, (c) a $2,500 deposit for the arbitrator.  (FAC ¶ 92.)  Plaintiff alleges the application of the Consumer Rules rather than the Commercial Rules shifted these fees to the Plaintiff from what under the Consumer Rules would have been an equal split.  (*Id.* ¶ 93.)  According to Plaintiff, the incorrect rule choice also leads to the appointment of a consumer arbitrator rather than a commercial one.  (*Id.* ¶ 94.)

Lahr then submitted a close to identical arbitration demand to the AAA on April 25, 2023.  (*Id.* ¶ 97.)  The AAA applied the Consumer Rules to the Lahr arbitration as well.  (*Id.* ¶¶ 100-101.)  Plaintiff's position is that "[b]y accepting and administering the Arbitrations with the expectation or receipt of payment, and by performing the obligations under the Arbitration Agreement, AAA became a party to the Arbitration Agreement."  (*Id.* ¶ 103.)  Lahr and Augustine sent Plaintiff settlement offers shortly after they filed their Arbitrations.  (*Id.* ¶ 49.)  Upon information and belief, Plaintiff alleges this is part of a pattern Augustine and Lahr have embarked upon with their arbitration counsel Daniel G. Shay ("Shay") and the Swigart Law Group ("Swigart"), in which they "have filed at least fifteen" frivolous cases which they then offer to settle for "nuisance value settlements," or put differently, "less than the cost for the large corporate defendants to litigate it."  (Id. ¶¶ 35-37, 47.)  Swigart and Shay share offices in San Diego, California.  (*Id.* ¶ 45.)  Shay represented Augustine and Lahr in their Chapter 7 Bankruptcy cases.  (Id. ¶ 35.)  Plaintiff alleges upon information and believe that "Shay refers his bankruptcy clients . . . to Swigart because recently discharged debtors are more inclined to file frivolous litigation for potentially quick settlements."  (*Id.* ¶ 46.)

Plaintiff states it "exposed Swigart and Shay's nuisance-value settlement practice in the Arbitration involving Augustine." (*Id.* ¶ 51.) Plaintiff alleges Swigart and Shay then filed Luce's arbitration "to be smoke and mirrors because . . . Luce might not have been a party in previous litigation or bankruptcy cases." (*Id.* ¶ 51.) Luce also proposed a "nuisance value settlement" to Plaintiff. (*Id.*) Luce filed a claim under the Consumer Rules with the AAA on June 23, 2023, claiming Plaintiff violated the federal Wiretap Act and CIPA by "intercepting, recording, & sharing [Luce's] electronic communications with [Plaintiff's] website & conspiring with third parties like Facebook & others to do the same. Claimant also asserts claims of invasion of privacy & inclusion upon seclusion." (*Id.* ¶ 105.) No arbitrator has yet been appointed in this case. (*Id.* ¶ 106.) Plaintiff alleges "[a]ny dispute by Plaintiff regarding arbitrability, the Consumer Rules, and other matters would likely be futile as the AAA administrator has already erroneously insisted on administering" the other arbitrations. (*Id.* ¶ 108.)

Plaintiff states "[Individual] Defendants' violations of the Terms of Use have forced Plaintiff into arbitration and, as a result, have caused and will continue to cause Plaintiff to suffer irreparable harm unless this Court grants the requested relief." (*Id.* ¶ 18.) Plaintiff states "[a]rbitration provides significantly less safeguards than the state and federal courts in New Jersey and, without Plaintiff's agreement, deprives Plaintiff of its constitutional right to access the courts. (*Id.*) Plaintiff further alleges that Claimants are not "Registered Users" under the terms of use because "Claimants did not use their names or otherwise completely and accurately register on Plaintiff's website" and therefore are not registered users." (*Id.* ¶ 111-114.) Plaintiff alleges that because the Individual Defendants' claims are not arbitrable, the AAA has exceeded its jurisdiction by administering the Arbitrations. (*Id.* ¶ 115.) Further, Plaintiff alleges Claimants have breached

the Terms of Use by filing the Arbitration (*id.* ¶ 116) and the AAA has both breached the Terms of Use and exceeded its authority by administering the Arbitrations (*id.* ¶ 117).

Plaintiff further alleges the AAA has failed to apply the Arbitration Agreement in various ways including by "refusing to apply the Commercial Rules," having not appointed an arbitrator in any of the arbitrations, and "has been acting solely as an administrator with respect to the Arbitrations." (Id. ¶¶ 131-136.) Plaintiff claims "by refusing to honor this clear and unmistakable language and insisting on proceeding with the Arbitrations, AAA has unlawfully sought to restrict the Court's jurisdiction and deprive Plaintiff of its right to access the courts." (*Id.* ¶ 137.) Plaintiff states "The Terms of Use is a valid and enforceable contract, but the AAA has refused to enforce it according to its plain terms." (*Id.* ¶ 138.) Plaintiff argues that "[b]y accepting and administering the Arbitrations with the expectation or receipt of payment, and by performing the obligations under the Arbitration Agreement, AAA became a party to the Arbitration Agreement." (FAC ¶ 103.)

### C.    Prayer for Relief

At a high level, Plaintiff seeks injunctive relief against the Individual Defendants in the form of an injunction against arbitrating their disputes. (*Id.* ¶ 17.) Plaintiff also asks the Court to (1) enjoin the AAA from "administering and compelling Plaintiff's participation in the Arbitrations" or, in the alternative, (2) substitute AAA with another arbitral forum. (*Id.*) In the case that the Court substitutes the AAA with another arbitral institution, Plaintiff asks that the Court "compel Defendants to comply with the Court's ruling on the non-arbitral issues presented in this action. (*Id.*) Plaintiff also brings claim "for breach of contract and indemnification" based on Defendants' breach of the Terms of Use. (*Id.* ¶ 24.) Plaintiff seeks "damages, attorneys' fees, costs, and other appropriate relief." (*Id.*)

At a more granular level, Plaintiff filed fifteen counts against the Defendants, with various specific and directed prayers for relief within.  (*See generally* FAC ¶ 139-245.)

Against all Defendants, Plaintiff brings Count I for a declaratory judgment that: Individual Defendants are not "registered users" and the issue is not arbitrable; the Arbitration Agreement does not apply to Claimants; directing AAA to dismiss and close the AAA arbitrations; enjoining Claimants from pursuing their claims against Plaintiff in another arbitration based on the Terms of Use; and awarding damages, pre-and post-judgment interest, costs, and attorneys' fees against the claimant and any other relief the Court deems proper.  (FAC ¶ 145.)[7]  Plaintiff brings Count II against all Defendants, asking for similar relief but related to a declaration that the issue of whether to apply the Consumer Rules is not arbitrable and that the AAA was improper in its decision to apply them; it further asks the Court to declare AAA's improper decision shows the AAA cannot or will not perform the Arbitration Agreement in accordance with its provisions.  (FAC ¶ 153.) Count III is also against all Defendants and asks the Court for similar relief in the form of a declaratory judgment stating issues of arbitrability are not arbitrable and that the AAA's ruling they are arbitrable shows it cannot or will not perform the arbitration in accordance with the Arbitration Agreement.  (FAC ¶ 159.)

Counts IV and V ask the Court for similar declaratory relief against all Defendants on the issues of whether the arbitrations must be conducted in New Jersey and that California law claims are precluded by the terms of the Arbitration Agreement designating New Jersey as the governing. (FAC ¶¶ 167, 174.)  In Count VI Plaintiff asks the Court for similar declaratory relief that the issue of whether to substitute the AAA is not arbitrable, that the Court may appoint a substitute, and that the Court either substitute itself or appoint JAMS as a substitute arbitral institution (FAC ¶ 183);

---

[7] Plaintiff argues throughout that Defendants are liable for all costs, interests, and attorney's fees in this action, and the Court will not reiterate at each count.

in Count VII against all Defendants it asks for a similar declaratory judgment regarding the "Rule to Apply" clause in the terms of use (FAC ¶ 190).

Count VIII, IX, X, and XI are brought against the Individual Defendants for their alleged breaches of contract in their use of the Jersey Mike's website.  Plaintiff asks for a judgment declaring Individual Defendants breached the Terms of Use "Access to Jersey Mike's Clause" by using the website to manufacture frivolous legal claims and seeking to modify or alter the website by precluding Jersey Mike's from sending data to Meta (Count VII); "Conduct" clause for using the website to file Arbitrations without having a valid cause of action, which Plaintiff states give rise to Claimant's own and AAA's civil liability (Count IX); "Registration" clause by "never registering their names on the website" (Count X); the "General" clause by filing AAA arbitrations instead of civil cases in New Jersey as unregistered users (Count XI), and for a declaration that such breaches are not arbitrable (FAC ¶¶ 199, 205, 209, 216).

Counts XII alleges breach of the Terms of Use choice of law provision by all Defendants by either bringing or not precluding California claims; Count XIII alleges breaches against all defendants of the covenant of good faith and fair dealing for benefitting financially from application of the Consumer Rules to the Arbitration and the decision to hold the arbitrations in California; Count XIV asks for a Declaratory Judgment to terminate the rights of Claimants to access its website.  (FAC ¶¶ 221, 235, 240.)  Plaintiff requests declaratory judgments that all breaches in Counts XII through Count XIV are not arbitrable.  (*Id.*)

Finally, Plaintiff asks in Count XV for Indemnification against all Defendants and asks the Court to declare that the claim for indemnification is not arbitrable and Defendants must indemnify Plaintiff, and pay all reasonable attorneys' fees and costs in connection both with the AAA Arbitration and the case in front of the District Court.  (FAC ¶ 245.)

### D.     Procedural Posture

Plaintiff filed the initial complaint in this case on June 26, 2023 against Defendants Lahr,

Augustine, and the AAA.  (ECF No. 1.)  Defendants Lahr and Augustine filed a Motion to Dismiss

on August 17, 2023 (ECF No. 13) that was terminated by the then-assigned district judge, for

violating her judicial preferences regarding submission of a pre-motion letter (ECF No. 14).

Plaintiff filed a Motion for Preliminary Injunction on August 22, 2023 seeking to enjoin the AAA

arbitrations (ECF No. 19) and the next day filed the FAC against all Defendants (ECF No. 22).

On September 8, 2023, counsel for the Individual Defendants agreed with Plaintiff to stay the

AAA arbitrations pending the determination of this case, mooting the preliminary injunction.

(ECF Nos. 24, 37.)  On September 15, 2023 counsel for Plaintiff filed a motion for attorney's fees

and costs (ECF No. 26), the Individual Defendants opposed on (ECF No. 38), and Plaintiff replied

(ECF No. 40).  The Individual Defendants filed the instant Motion to Dismiss on 12(b)(1) grounds

on October 13, 2023 (ECF No. 39), Plaintiff opposed (ECF No. 51) and the Individual Defendants

replied (ECF No. 54.).  The Court administratively terminated the motion for attorney's fees (ECF

No. 26) pending resolution of the motion to dismiss.  (ECF No. 43.)  On January 16, 2024 this case

was reassigned to the undersigned.  As noted *supra* at footnote 1, with consent from the Plaintiff,

Defendant AAA has asked for and been granted four extensions of time to respond to the FAC,

pending resolution of the question of subject matter jurisdiction raised by the Individual

Defendants' motion to dismiss.  (ECF No. 58.)

## II.     LEGAL STANDARD

Article III limits federal courts' jurisdiction to actual "cases or controversies." U.S. Const.

art. III, § 2. This requirement places the burden on plaintiffs to establish their "standing to sue."

*Raines v. Byrd*, 521 U.S. 811, 818 (1997).  Standing is a jurisdictional matter. *Behar v. Murphy*,

Civ. No. 20-5206, 2020 WL 6375707 at *2 (D.N.J. Oct. 30, 2020); *see also St. Thomas - St. John Hotel & Tourism Ass'n v. U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional."). At the pleading stage, Article III requires a plaintiff to allege facts showing (1) an "injury in fact;" (2) a causal connection between that injury and the conduct complained of; and (3) that such injury will likely be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  If a court determines that it lacks subject matter jurisdiction over a suit, it must be dismissed. *See* Fed. R. Civ. P. 12(h)(3).

A Rule 12(b)(1) motion can raise a facial attack or a factual attack, which determines the standard of review. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).  A facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law . . . or because some other jurisdictional defect is present." *Id.* at 358. In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff.  *Id.* On the other hand, a factual attack "concerns the actual failure of [a plaintiff's] claims to comport with the jurisdictional prerequisites." *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (internal quotation marks omitted). When considering a factual challenge, "the plaintiff [has] the burden of proof that jurisdiction does in fact exist," the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," and "no presumptive truthfulness attaches to [the] plaintiff's allegations." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

Prior to filing an answer, a defendant's motion to dismiss is considered a facial attack. *Const. Party of Pennsylvania*, 757 F.3d at 358 (defendant's motion was a "facial attack" because

14

it "filed the attack before it filed any answer to the Complaint or otherwise presented competing facts"); *Curlin Med. Inc. v. ACTA Med., LLC*, No. 16-2464, 2016 WL 6403131, at *2 (D.N.J. Oct. 27, 2016) ("[T]he Third Circuit's recent cases suggest that only facial attacks, and not factual attacks, can be brought in a motion to dismiss before an answer is filed.").  "Because a motion to dismiss raising a facial attack on subject matter jurisdiction relies solely on the pleadings, 'we apply the same standard of review we use when assessing a motion to dismiss for failure to state a claim.'"  *Schuchardt v. President of the United States*, 839 F.3d 336, 344 (3d Cir. 2016) (quoting *Finkelman v. NFL*, 810 F.3d 187, 194 (3d Cir. 2016)).  Under this standard, the court may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements."  *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)).

When using this standard "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).  However, an exception to the general rule exists for a "document integral to or explicitly relied upon in the complaint," which the court may consider without converting the motion to dismiss into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

On a Rule 12(b)(1) motion, a court presumes that it lacks subject matter jurisdiction, and "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Kehr*

*Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (when jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of persuasion).

## III.   DISCUSSION

The Individual Defendants argue that lack of subject matter jurisdiction over this case requires the Court to dismiss under Rule 12(b)(1) because the FAC does not adequately plead federal question jurisdiction under 28 U.S.C § 1331 or diversity jurisdiction under 28 U.S.C. § 1332.[8]

### A.  Federal Question Jurisdiction

The party asserting jurisdiction must "satisfy the well-pleaded complaint rule" mandating "the grounds for jurisdiction be clear on the face of the pleading that initiates the case." *Citigroup Glob. Markets Inc.*, 834 F.3d at 249.  "[A] well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Id.* at 249

Here, Plaintiff asserts in the FAC that its basis for federal question jurisdiction is that it "seeks to enforce its rights under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*."  (FAC ¶ 33.) It is well-settled law, however, that the FAA does not create federal question jurisdiction.  *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008) ("As for jurisdiction over controversies touching arbitration, the Act does nothing, being 'something of an anomaly in the field of federal-court jurisdiction' in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis.") (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32 (1983) ("The [FAA] is something of an anomaly in the field of federal-court

---

[8] Plaintiff argues in its Opposition that the Court should disregard the Individual Defendants' jurisdictional arguments due to an alleged breach of the Court's individual preferences.  (Opp. at 11.)  Because the parties' dispute is over subject matter jurisdiction (which cannot be waived) and the Court has an independent obligation to address that issue, it opines on Defendant's jurisdictional arguments.

jurisdiction. It creates a body of federal substantive law . . . yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise.)); *see also V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.,* 27 F.3d 911, 915 (3d Cir. 1994) ("[T]he Arbitration Act does not supply federal jurisdiction where it does not otherwise exist.").

Plaintiff's Opposition seems to argue the Court has federal question jurisdiction because of the federal claims at issue in the underlying arbitrations, and that the Court should look through the arbitration claims to reach this conclusion.  (Opp. at 20.)  If Plaintiff intends to make this argument, it has not pleaded as much on the face of the FAC, which only addresses federal question jurisdiction under the FAA.  (FAC ¶ 33.)  Plaintiff cannot amend its FAC through its subsequent briefing.  *Coda v. Constellation Energy Power Choice*, LLC, 409 F. Supp. 3d 296, 302 (D.N.J. 2019) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988.  As such, the Court finds no basis here for federal question jurisdiction.

### B.      Case or Controversy Requirement

Defendants also argue that the Court lacks diversity subject matter jurisdiction.  Based on the FAC, it appears that the parties are diverse.  However, the Court does not reach whether Plaintiff meets the amount in controversy required for diversity jurisdiction under 28 U.S.C. § 1332, because it first turns to the threshold issue of the justiciability of each claim brought by Plaintiff against each party before the Court.[9]  For the reasons set forth below, the Court does not reach the question of diversity jurisdiction under 28 U.S.C. § 1332.

---

[9] Plaintiff's briefing was impermissibly vague on the exact relief, particularly financial, it was requesting from each party.  It also did not cite any authorities, legal or otherwise, for the propositions in its FAC.  Plaintiff is reminded that in any future filings with this Court, it will be required to explicitly name each form of relief it requests from the Court as applied to each party and the legal basis for each prayer.

Under Article III of the Constitution, a federal court may only exercise jurisdiction where an actual "case" or "controversy" exists. *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, 454 U.S. 464, 471 (1982); *see also* U.S. Const. art. III, § 2. This limitation is enforced through several justiciability[10] doctrines, including "standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions." *Trustees of Gen. Assembly of Lord Jesus Christ of Apostolic Faith, Inc. v. Patterson*, 641 F. Supp. 3d 125, 133 (E.D. Pa. 2022) (internal citations omitted). Importantly, "the requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request . . . in terms that have a familiar ring to those trained in the legal process." *Valley Forge Christian Coll.*, 454 U.S. at 471. "The existence of a case and controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief." *S. Mountain Creamery, LLC v. U.S. Food & Drug Admin.*, 438 F. Supp. 3d 236, 241 (M.D. Pa. 2020) (citing *Presbytery of the Orthodox Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994).)

Taking all facts in the FAC as true and viewing them in the light most favorable to Plaintiff, the Court finds that the claims against all Defendants must be dismissed for the reasons set forth below. Non-justiciable claims are not properly suited for resolution by federal courts. *See, e.g., Rucho v. Common Cause*, U.S., 139 S. Ct. 2484, 2491 (2019). Courts may raise issues of justiciability, including standing, *sua sponte*. "[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *see also Meyer v. Delaware Valley Lift Truck, Inc.*, 392 F. Supp. 3d 483, 494 (E.D. Pa. 2019) (standing is jurisdictional and thus may be raised *sua sponte*) (citing *Med. Soc'y of N.J. v. Jacobs*, 1993 WL 413016, at *3 (D.N.J. Oct. 5,

---

[10] The Supreme Court defines justiciability as the determination of whether claims are "properly suited for resolution by the federal courts." *Rucho v. Common Cause*, 588 U.S. 684, 691 (2019).

1993).  Accordingly, a court may dismiss claims that are nonjusticiable for lack of subject-matter jurisdiction." *See* Fed. R. Civ. P. 12(b)(1); *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018).

Here, the FAC raises fifteen counts seeking relief that are each a mix of a prayer for declaratory judgment and monetary claims against a mix of parties not always made clear by the FAC.[11]  (*Supra* §I(C) Prayer for Relief; *see generally* FAC ¶¶ 139-245.)  Plaintiff also does not cite any legal basis for its claims other than the FAA and a nod towards common law breach of contract claims.  "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Wayne Land & Min. Grp., LLC v. Delaware River Basin Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020) (citation omitted).  The Court will therefore analyze the justiciability of each claim for relief against each party.

Determining the justiciability of actions for declaratory judgment is a distinct process from that of other claims.  The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).[12]  "[T]he phrase 'case of actual controversy' in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted).  "Before deciding a declaratory judgment case, a court must ask 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal

---

[11] The facts as pled in the prayer for relief section are not fully consistent with the facts as alleged elsewhere in the FAC.  The Court nonetheless construes any ambiguities in the light most favorable to the Plaintiff.

[12] Plaintiff did not cite to the Declaratory Judgment Act specifically, but courts construe it as applicable in cases where a party has asked the Court to issue declarative relief related to the Federal Arbitration Act.  *Doris Behr 2012 Irrevocable Tr. v. Johnson*, Civ. No. 19-8828, 2021 WL 2722569, at *3 (D.N.J. June 30, 2021) (applying the justiciability standard for declaratory judgment cases to relief requested related to the FAA).

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"
*Doris Behr 2012 Irrevocable Tr. v. Johnson*, Civ. No. 19-8828, 2021 WL 2722569, at *3 (D.N.J.
June 30, 2021) (citing *MedImmune*, 549 U.S. at 127).  Further, "the party seeking declaratory
judgment bears the burden of proving, "by a preponderance of the evidence, that there is an actual
controversy between the parties." *Id.* (citing *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 622 F.
App'x 169, 174 (3d Cir. 2015).

In declaratory judgment cases, the Third Circuit "appl[ies] a somewhat refined test for
ripeness that was first articulated in . . . *Step-Saver Data Systems, Inc. v. Wyse Technology*, 912
F.2d 643 (3d Cir. 1990)."  *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539–40 (3d Cir.
2017) (internal citation and quotation marks omitted).  Under the *Step-Saver* test, the Third Circuit
looks to "(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3)
the utility of the judgment."  *Id.* at 540 (quoting *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196
(3d Cir. 2004) (internal quotation marks omitted)).

In *MedImmune*, the Supreme Court noted that for a party seeking declaratory relief,
standing and ripeness can become the same question.  549 U.S. 118, 128 n.8 (2007).

> "The justiciability problem that arises, when the party seeking
> declaratory relief is himself preventing the complained-of injury
> from occurring, can be described in terms of standing (whether
> plaintiff is threatened with imminent injury in fact fairly . . .
> trace[able] to the challenged action of the defendant, *Lujan v.
> Defenders of Wildlife*, 504 U.S. 555, 560 (1992)), or in terms of
> ripeness (whether there is sufficient hardship to the parties [in]
> withholding court consideration until there is enforcement action,
> *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967)). As
> respondents acknowledge, standing and ripeness boil down to the
> same question in this case."
> *Id.* (internal quotation marks omitted).

In the words of the Third Circuit, "[i]t is sometimes argued that standing is about who can sue
while ripeness is about when they can sue, though it is of course true that if no injury has occurred,

the plaintiff can be told either that she cannot sue, or that she cannot sue yet." *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994) (internal quotation marks omitted)).  The Third Circuit further addressed this in *Plains*:

> "At its core, ripeness works to determine whether a party has brought an action prematurely . . . and counsels abstention until such a time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.  Various concerns underpin it, including whether the parties are in a 'sufficiently adversarial posture,' whether the facts of the case are 'sufficiently developed,' and whether a party is 'genuinely aggrieved.'"

*Plains*, 866 F.3d at 539 (citing *Peachlum v. City of York*, 333 F.3d 429, 433-434 (3d Cir. 2003) (internal citations omitted)). The Third Circuit clarified in *Plains* that although the *Step-Saver* ripeness tests differs in form from those articulated in other Third Circuit decisions or the Third Circuit's standing test articulated in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014), "it is merely a different framework for conducting the same justiciability inquiry" and "simply alters the headings under which various factors are grouped" and the Circuit "consider[s] related claims for declaratory and injunctive relief under the same *Step-Saver* test." *Plains*, 866 F.3d at 549.

To show standing, a plaintiff must establish: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 272 (3d Cir. 2016) (quoting *Finkelman*, 810 F.3d at 193).  "[T]he grounds for jurisdiction must be clear on the face of the pleading that initiates the case." *Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 249 (3d Cir. 2016) (citation omitted).

Here, none of the claims for declaratory or other relief survived the justiciability analysis required of the Court for the reasons set forth below.

      *1.     The Indemnification Clause*

      The FAC seeks indemnification from Claimants under the Terms of Use primarily in Count

XV, where it asks the Court to declare that the indemnification claim is not arbitrable, declare the

Defendants must indemnify Plaintiff and award Plaintiff all damages, costs and attorneys' fees.

(FAC ¶ 245.)  Plaintiff also weaves an indemnification claim into Counts I-XIV.  Plaintiff does

not cite a single legal authority supporting a district court making this type of declaratory judgment,

and relies on the common law of contract interpretation.

      Contract interpretation is a matter of state law.  Under New Jersey rules of contract

interpretation, when "attempting to discern the meaning of a provision . . . the plain language is

ordinarily the most direct route." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J.

231, 238, (2008).  To determine a party's intent, a court engages in "[s]traight-forward contract

interpretation . . . as manifested by the terms used in the written [contract]." *Colony Ins. Co. v.

Aspen Specialty Ins.* Co., 564 F. Supp. 3d 343, 351 (D.N.J. 2021).

      The Court agrees with the Individual Defendants' assessment that the plain text of the

Indemnification Clause (Terms of Use at 3-4) clearly demonstrates it is intended to apply to

lawsuits involving third parties and not to suits between the contracting parties (ECF No. 54 at 9).

Any other reading leaves much of the clause superfluous and otherwise nonsensical. *See, e.g.*,

Terms of Use at 3-4 ("[User] agree[s] to cooperate as fully as may be reasonably possible in the

defense of any . . . . claim . . . . [the user] in turn shall not settle any matter without the written

consent of Jersey Mike's.")

      Further, New Jersey state law strongly disfavors shifting attorney's fees, and similar

provisions have been held unenforceable in suits between contracting parties. *See N. Bergen Rex

Transp., Inc. v. Trailer Leasing Co., a Div. of Keller Sys.*, 158 N.J. 561, 569 (1999) ("[E]ven where

attorney-fee shifting is controlled by contractual provisions, courts will strictly construe that

provision in light of the general policy disfavoring the award of attorneys' fees."); *see also Hill v. Com. Bancorp, LLC*, Civ. No. 09-3685, 2011 WL 2293324, at *6 (D.N.J. June 8, 2011) ("Because a party is ordinarily liable for its own negligence, . . . a court must strictly construe an indemnification provision against the indemnitee if the provision is ambiguous") (internal quotations and citations omitted).   Assuming *arguendo* all other claims in this action were to survive, the Defendants would still not be subject to this indemnification under New Jersey law. *McGuire v. Jersey City*, 125 N.J. 310 (N.J.1991) (refusing to apply fee-shifting provision to claim for breach of contract).   Therefore, the Court dismisses Count XV in its entirety and rejects all prayers for relief via the Court's award of indemnification in Counts I-XIV.

      2.    *Count VI Is Not Ripe*

      Count VI asks the Court to replace AAA as Arbitrator under 9 U.S.C. § 5.  "The Court may exercise this authority in three circumstances: (1) if the parties have agreed to no method for appointing an arbitrator, (2) if the parties have agreed to a method of appointment but have failed to use it, or (3) "if for any other reason there shall be a lapse in the naming of an arbitrator[.]" *Vital Pharms. Inc. v. PepsiCo Inc.*, Civ. No. 22-00591, 2022 WL 2176528, at *2 (D. Ariz. June 16, 2022).   However, on the basis of the plain text of the statute, that request for Declaratory Judgment is not ripe.  Section 5 requires that if there is "a lapse in the naming of an arbitrator or arbitrators or umpire" then the Court shall designate one.  First, Plaintiff requests substitution of JAMS for AAA which is a substitution of the *arbitral institution* rather than *appointment of an arbitrator or arbitrators*, as provided by the statute, without citing authority or a basis for that substitution. *See* FAC ¶¶ 179-180*.*  Second, Plaintiff has not adequately pled delay or a lapse other than the stay Plaintiff itself insisted on in this arbitration, or pled facts to suggest the requirements of §5 have been met.  (*Id.*)  Third, Plaintiff mischaracterizes its own Terms of Use once again, as it has explicitly incorporated the AAA Commercial and Consumer Rules into its Arbitration

Agreement, and therefore has therefore designated a "method" for appointing an arbitrator under both sets of Rules. *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020) (finding incorporation of the AAA rules into an Arbitration Agreement where contract specifies arbitration shall be subject to the current AAA rules). The Court dismisses Count XI in its entirety.

      3.    *All Claims Relating to the Application of the Consumer Rules to the AAA Arbitrations*

Motions to be resolved on the pleadings must allege a case or controversy. Fed. R. Civ. P. 8. Rule 8 maintains a "threshold requirement that a complaint must contain a 'plain statement' indicating that the complaint possesses enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557 (citing Fed. R. Civ. P. 8). There is no Article III case or controversy when on the plain language of the pleadings there is no claim to be brought. "It is well-settled that '[c]ourts enforce contracts "based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract.'" *JPC Merger Sub LLC v. Tricon Enterprises, Inc.*, 474 N.J. Super. 145, 160 (App. Div. 2022) (citing *In re County of Atlantic*, 230 N.J. 237, 254 (2017) (alteration in original).

"[T]he FAA respects the 'fundamental principle that arbitration is a matter of contract,'" *Khan v. Dell Inc.*, 669 F.3d 350, 354 (3d Cir. 2012) (citing *Rent–A–Center, West, Inc. v. Jackson*, U.S. 130 S.Ct. 2772, 2776, (2010)). Contract interpretation is a matter of state law. Under New Jersey rules of contract interpretation, when "attempting to discern the meaning of a provision . . . the plain language is ordinarily the most direct route." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238, (2008). To determine party's intent, the Court engages in "[s]traight-forward contract interpretation . . . as manifested by the terms used in the written [contract]." *Colony Ins. Co. v. Aspen Specialty Ins. Co.*, 564 F. Supp. 3d 343, 351 (D.N.J. 2021).

24

Throughout the FAC the Plaintiff accuses all Defendants, but the AAA in particular, of dire conduct related to the application of the Consumer Rules to the Arbitrations. *See, eg.*, FAC ¶ 222 (alleging the AAA breached the covenant of good faith and fair dealing by "financially benefitting from improperly applying the Consumer Rules"); *Id.* ¶ 10 (alleging the AAA failed to apply the arbitration agreement by applying the Consumer Rules instead of the Commercial Rules); *Id.* ¶¶ 185-187 (alleging the Individual Defendants breached the Terms of Use by filing pursuant to the Consumer Rules rather than the Commercial Rules).

First, the allegations that either the AAA or the Claimants benefitted financially from application of the application of the Consumer Rules is false on its face, as shown by a brief review of the active Commercial Rules.  The only financial damages to date pled by Plaintiff due to the AAA's choice of the Consumer Rules over the Commercial Rules are the "several fees" that would not have applied under the Commercial Rules, including a $600 registration fee and a $2,500 deposit for arbitrator compensation.[13]  (FAC ¶ 92.)  Plaintiff also complains that fee-sharing operates differently between the Commercial Rules and the Consumer Rules, creating higher fees for Plaintiff overall.  (*Id.* ¶ 93.)  However, the Commercial Rules state that "[b]eginning June 1, 2021, the AAA will apply the Consumer Arbitration Fee Schedule to any dispute between an online . . . platform and an individual user . . . and the dispute does not involve work or work-related claims."  Commercial Rules at 10.  Therefore, even accepting Plaintiff's argument *arguendo* and accepting the Commercial Rules should apply and AAA is wrong to administer the case under the Commercial Rules, there is no injury to Plaintiff financially because the fee schedule would be identical under both sets of rules.  Plaintiff therefore has no standing to bring claims based on the

---

[13] The FAC alleges these "would not have applied under the Consumer Rules" but the Court understands the argument in context to mean that they would not have applied under the Commercial Rules.  Further, for clarity, these are the only concrete monetary damages pled in the FAC.

alleged higher fees. *In re Nickelodeon*, 827 F.3d at 272 (requiring an injury in fact to establish standing). The Court dismisses all claims against all Defendants predicated upon injuries due to the allegedly higher fees or implications of financial gain due to application of the Consumer Rules, specifically: all prayers for relief or damages calculations due to "AAA fees" in Counts I-IV; any support based on financial incentive for alleged Breach of the Covenant of Good Faith, Count XIII (FAC 231-234).

Second, Plaintiff's repeated averment that the Arbitration Agreement "express[ly] select[ed]" Commercial Rules amounts to nothing more than selective quotation and a disinclination towards cross-referencing. On the face of Plaintiff's Arbitration Agreement, the Consumer Arbitration Rules apply to this dispute as much as the Commercial Rules do. The Arbitration Agreement States that the AAA shall administer any relevant arbitrations in accordance with "its Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes." (Terms of Use at 6.)[14] The Supplementary Procedures for Consumer Related disputes were amended and renamed the Consumer Arbitration Rules as of September 1, 2014. Consumer Rules at 9. On its face, the Arbitration Agreement in question was drafted at more four years after this renaming process. (Terms of Use at 2 (showing the rules were "Last Updated: 02/05/2018.") Even if the Plaintiff were to dispute the date, the Consumer Rules specify that the "parties shall have made these *Consumer Arbitration Rules* . . . a part of their arbitration agreement whenever they have provided for arbitration by the AAA and . . . have specified that the Supplementary Procedures for Consumer-Related Disputes shall apply, which have been amended and renamed the *Consumer Arbitration Rules*." Consumer Rules at 9. Plaintiff's briefing on Rule 1 of the Commercial Rules was a mischaracterization of the Terms of

---

[14] The Court notes that Plaintiff failed to cite the reference to the Supplementary Procedure, or attach the underlying contract to its Complaint.

Use as Plaintiff did, clearly, proffer the Consumer Rules directly in the text of the Arbitration Agreement.  (FAC ¶ 84.)

Plaintiff's facts as alleged show no wrongdoing on the part of the AAA in relation to its rule sets, given the plain text of Plaintiff's arbitration agreement incorporates the rules it complains of.  Further, the plain text of the Arbitration Agreement shows there is no basis to ask the Court to substitute an arbitrator, as Plaintiff has not pled that the AAA "cannot or will not perform arbitration in accordance with the provisions of this agreement."  *Id.* at 10.  Determining the appropriate rules for a given situation when the contract explicitly incorporates those rules is exactly the type of decision within the ambit of arbitrators and arbitral institutions.  *Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*, 304 F.3d 476, 491 (5th Cir. 2002) (holding the District Court should not intervene in every arbitrator dispute merely because a party claims its rights under the contract are at issue).

Plaintiff claims the AAA has "force[d] Plaintiff into arbitration and that "Plaintiff lacks an adequate remedy at law because . . . no amount of damages can remedy being compelled to arbitration."[15]  (FAC ¶¶ 18, 19.)  However, Plaintiff is a sophisticated party who drafted the Arbitration Agreement in question and chose to designate AAA as its arbitral institution, and cited both sets of Rules.  "[A]rbitration is fundamentally a creature of contract . . . and thus arbitrators have the authority to resolve disputes only if the parties have agreed to submit to arbitration."  *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 54 (3d Cir. 2001).  It is

---

[15] Plaintiff's language imply it alleges a Fourteenth Amendment due process violation against Defendants because it is "deprive[d] of its constitutional right to access the courts."  (FAC ¶ 19.)  To the extent it is making that argument, "the protections of the Fourteenth Amendment do not extend to private conduct abridging individual rights."  *Austern v. Chicago Bd. Options Exch., Inc.*, 716 F. Supp. 121, 125 (S.D.N.Y. 1989), *aff'd*, 898 F.2d 882 (2d Cir. 1990) (quoting *N.C.A.A. v. Tarkanian*, 488 U.S. 179, (1988) (applying this standard in a case against an arbitral institution); *see also Fed. Deposit Ins. Corp. v. Air Fla. Sys., Inc.*, 822 F.2d 833, 842 n.9 (9th Cir. 1987); *Williams L. Grp. PLLC v. Am. Arb. Ass'n*, Civ. No. 21-00149, 2021 WL 3417955, at *1 (D. Ariz. July 27, 2021) (finding that private arbitration proceedings do not give rise to state action requisite for a due process claim).

clear from the Arbitration Agreement itself and the cited rule sets that it is the Arbitrator's role, not the Court's to determine parties' disputes as to which rules should be applied, and that Jersey Mike's as the drafter of that contract is bound by it.  The Court dismisses all claims against all Defendants predicated on the AAA's application of the Consumer Rules, or the Individual Defendants' reliance on them in filing in front of the AAA: namely, Count II in its entirety; Count VII in its entirety; allegations in Count IX suggesting civil liability arose from application of or filing under the Commercial Rules; allegations under Count XIII that application of or filing under the Consumer Rules was a breach of the covenant of good faith and fair dealing.

4.      *Remaining Claims Against the AAA Fail*

a.   *The AAA is Not a Party to Plaintiff's Terms of Use*

Finally, to the extent that any breach of contract claims remain against the AAA, Plaintiff cannot allege a breach of contract between itself and the AAA because it has not cited a contract the AAA is party to.  The FAC argues "[b]y accepting and administering the Arbitrations with the expectation or receipt of payment, and by performing the obligations under the Arbitration Agreement, AAA became a party to the Arbitration Agreement."  (FAC ¶ 103.)  While novel, that theory is completely unsupported by citation to any authority or legal theory.  While there is a contractual relationship between a disputing party and an arbitral institution, the contract between is based in the institutional rules, rather than a unilateral contract written by one of the disputing parties.  *See, e.g.,* Matthew Rasmussen, Overextending Immunity: Arbitral Institutional Liability in the United States, England, and France, 26 Fordham Int'l L.J. 1824, 1867 (2003) ("The institution puts out a permanent offer to contract by drafting and publishing its rules and providing fixed conditions for acceptance.  The parties accept the offer when they agree to resolve potential disputes through a particular institution in their contract with each other.  The contract is not

perfected, however, until the parties request arbitration, thus notifying the institution of their acceptance.") (citations omitted).

      b.  *The Contractual Relationship Between Plaintiff and the AAA Preclude any Remaining Claims Against the FAA*

In direct contrast to Plaintiff's argument that the AAA is bound to its Terms of Use by administering arbitrations related to it, Plaintiff is bound to the AAA Rules when designating it as an arbitral institution and entering into arbitration under its rules. (*Id.*) As noted above, by designating the AAA as the administering institution, a party incorporates the chosen Arbitral Institution rules into its Arbitration Agreement. *Richardson v. Coverall N. Am.*, Inc., 811 F. App'x 100, 103 (3d Cir. 2020) (finding incorporation of the AAA rules into an Arbitration Agreement where contract specifies arbitration shall be subject to the current AAA rules). In the case of the AAA, among other institutions, these rules include liability provisions. Matthew Rasmussen, *Overextending Immunity: Arbitral Institutional Liability in the United States, England, and France*, 26 Fordham Int'l L.J. 1824, 1836 (2003) ("Institutional rules often limit or exclude the institution's own liability in performing its functions.") According to AAA Commercial Rule 54(b), "[n]either the AAA nor any arbitrator in a proceeding under these Rules is a necessary or proper party in any judicial proceedings relating to the arbitration or any other services provided by the AAA." Commercial Rules at 32.[16]

---

[16] To the extent Plaintiff may contend that the Court should apply the Consumer Rules rather than the Commercial Rules, for thoroughness Consumer Rule 49(b) is an equivalent provision.

Moreover, while the Third Circuit has not yet examined this exact issue, other Circuits have held that arbitral institutions acting in their administrative roles benefit from the same arbitral quasi-immunity to suit as an arbitrator would, and are immune from suits related to performing their function of administering arbitrations. *Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990) (collecting cases regarding arbitral immunity and holding that it extends to arbitral institutions as well as individual arbitrators, in accordance with decisions from the Sixth and Eighth Circuits); *see also Garzella v. Borough of Dunmore*, 237 F.R.D. 371, 372 (M.D. Pa. 2006) (characterizing arbitrator immunity as part of a "long standing precedent" for those serving quasi-judicial roles).

For the reasons above, the Court finds all remaining claims against the AAA must be dismissed.  For clarity, this includes all remaining claims or prayers for relief against AAA, both declaratory and monetary, under Counts I-XV, including Count III in its entirety.

1.  *Remaining Claims in Counts IV, V, XII, and XIV Present No Justiciable Issue*

Although the Court will not belabor the point, several of Plaintiff's claims fail at first blush for lack of a justiciable issue for the Court to weigh.  In the interest of economy, the Court deals with them summarily.  For clarity, the Court affirms that in its assessment none of these Counts meet the standards for cases and controversy under Article III and do not meet the Third Circuit's tests discussed above meriting declaratory action or awards.

Count IV: First, there is no basis in the Terms of Use for Count IV and therefore no case or controversy.  Plaintiff asks for a declaratory judgment that the AAA arbitrations must be conducted in New Jersey.  The only provisions of the contract specifying New Jersey as the location of the Arbitration relate specifically to the Courts of New Jersey, and explicitly exclude arbitrations brought under the Arbitration Agreement.  (Terms of Use at 9 ("Any claim or dispute between [a user] and Jersey Mike's that arises in whole or in part from the Jersey Mike's website shall be decided exclusively by a court of competent jurisdiction located in Monmouth County, New Jersey, *unless subject to the Mandatory Dispute Resolution terms for Registered Users below*") (emphasis added); c*ompare* Terms of Use Arbitration Agreement at 5-6, *with* General at 5 (excluding in the General section requiring New Jersey jurisdiction disputes under the Arbitration Agreement).  Plaintiff offers no basis for asking the Court for this relief other than facts irrelevant to the location of the arbitration, such as where the website is hosted.  (ECF No. 161-167).  Any question of where the arbitrations should be located is not a decision for the Court, but

rather between the parties in the arbitration and subject to the arbitrator's authority.  The Court dismisses Count IV in its entirety.

Count V and XII: Plaintiff asks for declaratory relief finding that Claimants' claims under California law are not arbitrable under Count V and under Count XII asks the Court to declare assertions that California law apply are a breach of contract.  (FAC ¶ 170.)  The Terms of Use require that the Terms be interpreted under New Jersey law.  (*Id.* ¶ 171.)  However, the determination of what state's law claims can be brought against Plaintiff are a question for the underlying arbitrations, and do not fall under any potential exception subject to the Court's review. As such, the Court has no subject matter jurisdiction upon which to intervene.  The Court dismisses Count V in its entirety.

Further, it is not a civil breach of contract under either federal or state law for Claimants to bring legal arguments under a contract that the other party disagrees with into an arbitration, and Plaintiff cites no authorities arguing that it is.  "It is well established that the Federal Arbitration Act (FAA) reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l*, L.P., 341 F.3d 256, 263 (3d Cir. 2003)).  Such precedent would significantly chill participation in arbitration, and a contractual term that provided such a remedy would likely be found substantively unconscionable and unenforceable.  "The FAA . . . does not preclude an examination into whether the arbitration agreement at issue is unconscionable under state law." *Muhammad v. Cnty. Bank of Rehoboth Beach, Delaware*, 189 N.J. 1, 12 (2006); *see also* Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353, 605 A.2d 681, 685 (1992) ("If an agreement is characterized as a 'contract of adhesion' however, nonenforcement of its terms may be justified on other than such traditional grounds as fraud, duress, mistake, or

illegality.") (citing Todd D. Rakoff, *Contracts of Adhesion: An Essay in Reconstruction*, 96 Harv.L.Rev. 1174, 1190–92 (1983).  The Court dismisses Count XII in its entirety.

Count XIV: Plaintiff asks the Court to confirm it can Terminate the Defendants' access to its website.  This count presents no justiciable issue because under the Terms of Use the Plaintiff itself has full authority to terminate Claimants' access to its website if it believes, as it alleges in this lawsuit, that Claimants violated the websites' terms.  (FAC ¶ 238 ("Jersey Mike's may (in its sole discretion) suspend/ terminate [a user's] access to or use of Jersey Mike's website without notification for any violation of these Terms").)  Plaintiff does not specify under what authority the Court would grant this relief, or its basis for asking the Court for this relief when it is facially within Plaintiff's "sole discretion" and not the Court's.  (FAC ¶ 240.)  The Court dismisses Count XIV in its entirety.

### C.    No Standing to Assert Remaining Claims Against the Individual Defendants

Finally, the Court also determines Plaintiff has no standing to bring either breach of contract or declaratory judgment claims against the Individual Defendants.  Taking all facts as alleged in the FAC, Plaintiff has not sufficiently stated claims showing it was injured by the Individual Defendants, or that if it was injured such actions gave rise to the relief sought.

When Plaintiff does allege injury, it is entirely conclusory and not based on facts.  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (3d Cir. 2023) (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)).  For example, the only basis for a breach under Count VIII's Access Provision are legal conclusions attempting to punish the Individual Defendants for the fact that they brought arbitration claims against Plaintiff, an argument the Court has already rejected.  (FAC ¶ 194.)

Plaintiff's theory would require that any user of its website be subject to civil breach of contract claims if the user then decided to bring a claim against Plaintiff.  The only injury alleged is that Plaintiff is required to abide by its own arbitration agreement, which is not a justiciable injury. Such interpretations proposed by Plaintiff would be substantively unconscionable, particularly in light of a contract of adhesion between an individual and a large corporation like Jersey Mike's. *Rudbart*, 127 N.J. at 354 (characterizing contracts of adhesion as standardized forms, on a take-it-or-leave-it basis without opportunity for purchasers to negotiate any of the terms); *see also Falk v. Aetna Life Ins. Co.*, Civ. No. 19-00434, 2019 WL 4143882, at *5 (D.N.J. Aug. 31, 2019) ("Substantive unconscionability is . . . contractual defense that may render an agreement unenforceable . . . Substantive unconscionability looks to whether the arbitration provision unreasonably favors the party asserting it.) (citing *Nino v. Jewelry Exch. Inc.*, 609 F.3d 191, 201 (3d Cir. 2010); *Zimmer v. Coopemeff Advisors, Inc.*, 523 F.3d 224, 228 (3d Cir. 2008).  The same analysis applies to Count IX (alleging because Claimants brought arbitrations against Plaintiff they "gave rise to their own civil liability" through use of the website).  The Court will dismiss Count VIII and Count IX in their entirety.

Plaintiff's remaining allegations in this case rest upon the Individual Defendants' violation of the Terms of Use by bringing arbitrations when they were not registered users.  Plaintiff alleges this constitutes a breach of contract. (FAC ¶ 145.)  However, Plaintiff does not cite any provision of the Terms of Use that prohibit such conduct.  The Terms of Use section on Conduct states that all users, regardless of whether they are registered users or not, "agree to access and use Jersey Mike's website for lawful purposes, ONLY."  (Terms of Use at 7.)  Under the Terms of Use, users must not (1) use the website to commit criminal offenses (2) post threatening, libelous, harassing, defamatory, or otherwise objectionable content; (3) use the website to impersonate other parties or

entities; (4) use the website to upload viruses or other malware that alters, damages, or interrupts the website; (5) upload or post materials that you don't have the right to transmit under law; (6) alter, damage, or delete content on the website (7) disrupt the functionality of the website (8) claim a relationship with or speak for Jersey Mike's; (9) solicit or advertise; (10) post material that infringes the rights of others or (10) collect or store personal information about others.  (Terms of Use at 3-4.)

When the FAC does assert violations of the Terms of Use it only alleges that the Defendants committed a specific violation, without adding facts or evidence as to how it came to such conclusions, what their behavior actually consisted of, or the ways in which the alleged action breached the Terms of Use.  (*See generally* FAC.)  Plaintiff's only explicit allegation supporting its conclusory statement that Defendants have violated the Terms of Use by filing arbitrations with the AAA is "Claimants did not use their names or otherwise completely and accurately register on Plaintiff's website" and therefore "they are not registered users."  (FAC ¶ 114.)[17]  Plaintiff then argues, "[a]ccordingly, Claimants have breached the Terms of Use by filing the Arbitrations." (*Id.* ¶ 116.)  However, as analyzed above, there is nothing on the face of the contract that supports a breach of contract claim against individual unregistered users who try to file arbitrations under the Terms of Use.

Jersey Mike's is a sophisticated corporation with significantly more resources than an individual user.  The implication of its argument in the FAC is that it should be allowed to sue in a civil trial any individual it determines should not have brought an arbitration against it under an Arbitration Agreement, and potentially ask a court for punitive damages and full indemnification

---

[17] In other parts of the FAC Plaintiff merely alleges Individual Defendants' didn't provide their names.  (FAC ¶ 208.) It also does not specify what information each Individual Plaintiff did or did not provide, what they were asked to provide, and in what way their registration was incomplete or inaccurate.

of its own legal fees, as it asserts in this case.  (Opp. at 17; *see also* FAC ¶ 145(f) (asking the Court to "award[] Plaintiff damages, pre- and post-judgement interest, costs, and attorneys' fees against Claimants" on the basis that the Individual Defendants are not registered users and their claims are not arbitrable).)   Plaintiff does not cite any authority supporting its reasoning, and such an interpretation of the law risks a significant chilling effect on individuals' willingness to bring arbitrations, running counter to longstanding precedent that there is a "strong federal policy in favor of the resolution of disputes through arbitration." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citing *Alexander v. Anthony Int'l*, L.P., 341 F.3d 256, 263 (3d Cir. 2003)).  The Court must dismiss Plaintiff's claims for breach of contract on this basis against the Individual Defendants.  The Court therefore will dismiss Count X and XI.

Further, even assuming *arguendo* that a non-registered user attempting to bring an arbitration is a breach of contract under the Terms of Use, Plaintiff does not sufficiently allege the Individual Defendants are not registered users.  "Registered user" is a defined term in the Terms of Use, meaning those users "who register for communications by text or e-mail, or who register for online accounts, or provide information to order food, gift cards, or merchandise as a guest." (FAC ¶ 62; Terms of Use at 2.)  Plaintiff's only statement on the issue is the unsubstantiated conclusion that because "Claimants did not use their names or otherwise completely and accurately register on Plaintiff's website, they are not registered users."  (FAC ¶ 114.)  However, the plain language of the Defined Term does not facially require a full name or a "complete" registration on the website to become a Registered User.  While the Registration section requires that "[w]hen you provide us with information, you agree that any personal information provided to us is complete and accurate" it does not state that failure to do so means that a user is not a "registered user."  (Terms of Use at 2.)  A Plaintiff's "conclusory statement" should be disregarded by the

Court under a motion to dismiss standard.  *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)).)  Further, Plaintiff's bare statement that the Individual Defendants were not correctly registered is not enough to sustain either injunctive or monetary relief without more.  "[A] pleading that offers 'labels and conclusions' . . . will not do . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff has neither sufficiently pled an injury arising from the Individual Defendants' actions nor sufficient facts to raise a question of arbitrability in front of the Court.[18]  As such, the Plaintiff also cannot maintain any claim for breach of the covenant of good faith and fair dealing, as it has not sufficiently alleged wrongdoing or bad faith.

Due to lack of subject matter jurisdiction, the Court will dismiss Counts I and XIII in their entirety.  The Court understands and intends there be no lingering claims at issue, as all have been dismissed for lack of subject matter jurisdiction.

---

[18] Because the facts as alleged do not support Plaintiff's contention that the Individual Defendants are not Registered Users, the Court does not address whether this issue is arbitrable or not.

## IV.   CONCLUSION

For the reasons stated above, the Court will **DISMISS** all claims against the AAA with prejudice because dismissal is based on the plain terms of the contract, and amending pleadings would be futile.  As to Individual Defendants, the Court **will DISMISS with prejudice** Counts II, III, IV, V, VII, XII, XIV, XV as amending the pleadings would be futile.  The Court will **DISMISS without prejudice** the remaining claims against the Individual Defendants:  Counts I, VI, VIII, IX-XI, XIII.


Date: May 31, 2024

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
